UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re

**HASSAN NAVABI &**
**YULIA MENDYUK**                    Case No. 10-16795
        **Debtors**
                      Chapter 11


**DISCLOSURE STATEMENT**

**INTRODUCTION**

      HASSAN NAVABI. and YULIA MENDYUK (collectively the "Debtors") by and through the undersigned counsel, hereby submit this Disclosure Statement in connection with the above captioned case (hereinafter sometimes referred to as the "Statement" or "Disclosure Statement") to all of their known creditors in order to disclose that information deemed by the Debtors to be material, important and necessary for his creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Plan of Reorganization (hereinafter referred to as the "Plan") which is described herein below at Roman Numeral IV.

      This Disclosure statement will be submitted to the creditors together with the Plan, which the Debtors is proposing to the Court and the creditors. After approval of this Disclosure Statement and the Plan, the creditors will have the opportunity to vote for the acceptance or rejection of the Plan. A copy of the proposed Plan is being submitted to creditors for review simultaneously with provision of this Disclosure Statement. Upon approval of this Disclosure Statement, a copy of the approved Statement and Debtors' proposed Plan will be transmitted to creditors along with a ballot. The ballot should be completed by you and returned to the counsel for the Debtors, who will in turn file it with the Bankruptcy Court. The Court will fix a date for consideration of the approval of the Plan, referred to as the "Confirmation Hearing". As a creditor, your acceptance is important. In order for the Plan to be deemed accepted, it must be accepted by creditors that hold at least two-thirds in dollar amount of claims and more than one-half in number of the allowed claims in each Class that actually vote for or against the Plan.

      NO REPRESENTATIONS CONCERNING THE DEBTORS (PARTICULARLY AS TO HIS FUTURE INCOME AND EXPENSES AND THE VALUE OF ANY PROPERTY) ARE AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF A PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION ON SUCH PLAN, AND SUCH ADDITIONAL REPRESENTATION AND INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO

**THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT. FOR THE FOREGOING REASONS, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTORS' FINANCIAL MATTERS, THE DEBTORS IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH SUBSTANTIAL EFFORT HAS BEEN MADE TO BE ACCURATE.**

**II.     HISTORICAL BACKGROUND AND CHAPTER 11 EVENTS**

Debtor HASSAN NAVABI is a 62 year-old man married to Debtor Yulia Mendyuk, a 67 year-old woman. Debtor Hassan Navabi is employed and has been employed as a cook and sous chef in local hotel chains. Debtor Yulia Mendyuk is employed in the hair-dressing business. During the recent real estate boom, certain unscrupulous individuals convinced Mr. Navabi and Ms. Mendyuk to begin buying real estate to hold as rental properties. Unfortunately for the Debtors, operating the properties caused them to accumulate unsecured debt and left them with a number of properties that were underwater. Ultimately, they fell behind on the mortgages on these investment properties, as well as their unsecured credit card bills. Believing that they would qualify for a Home Affordable Modification Program home loan modification, the Debtors filed this Chapter 11 bankruptcy case to reorganize their financial affairs and strip off the second mortgage on their principle residence.

**III.    FINANCIAL INFORMATION**.

In order for a creditor to arrive at a reasonably informed decision before exercising the right to vote on a Plan of Reorganization, a proposed distribution under a plan must be considered in light of what a creditor could reasonably anticipate receiving under the alternative of a Chapter 7 liquidation case. In arriving at this decision, a creditor must consider several factors: (1) the liquidation value of the Debtors' assets in a Chapter 7 case; (ii) the liabilities that would be paid in a Chapter 7 case in the order of their priority as established by the Bankruptcy Code; and (iii) the disposable income that the Debtors must commit to the payment of unsecured creditors pursuant to Section 1129 of the United States Bankruptcy Code.

**A. Analysis of Assets**.

The first area of inquiry encompasses the assets and liabilities as scheduled by the Debtors or as claimed by the creditors. First, the Debtors scheduled one parcel of real property, 1601 Wood Duck Court, Woodbridge, Virginia 22191 (the "Real Property"), which they valued at filing at $419,000. Subsequent to filing, the Debtors received an appraisal of the Real Property, which valued the Property at $340,000. Schedule D clearly shows secured claims secured by the Property in the amount of $524,000 for the Debtors' first mortgage and $197,462.70 for the Debtors' second mortgage. Even if the creditors disregard the existence of the second mortgage, the Debtors clearly have no equity in the Real Property. Additionally, the Debtors own certain personal property. Specifically, the Debtors scheduled $224,514 of personal property. Of this personal property, approximately $165,000 constitutes the Debtors' interest in certain qualified retirement plans that are not property of the bankruptcy estate and so

2

not available for creditors in the context of a liquidating Chapter 11 or Chapter 7 bankruptcy case.  Of the remaining $59,514, $24,870 of this personal property consists of two automobiles that serve as collateral for purchase money loans of Toyota Motor Credit Corporation.  Because the amount owed in connection with the purchase money loans of Toyota Motor Credit Corporation exceeds the value of the collateral, there is no net equity available for creditors in this bankruptcy case.  Of the remaining $34,644, $23,000 consists of non-exempt cash on deposit in the Debtors' trust account with their attorneys.  The remaining $11,644 of personal property has been fully and properly exempted in connection with this bankruptcy case and no party has objected to such exemptions.  Thus, a hypothetical Chapter 7 bankruptcy case would anticipate distributing a gross amount of $22,194 without accounting for the commissions and expenses of a Chapter 7 trustee.  As this Disclosure Statement will show below, the Debtors anticipate distributing $24,000 to their unsecured creditors through this Chapter 11 Plan, which will exceed the amount that would be distributed in a hypothetical Chapter 7 bankruptcy case.  After accounting for administrative, secured and priority claims that would be paid in a Chapter 7 bankruptcy case, there would be a distribution less than distribution of $24,000 proposed in the Debtors' Chapter 11 plan.

Accordingly, the Debtors' proposed distribution of $24,000 to unsecured general creditors is likely to realize more than what unsecured creditors might realize in a Chapter 7 liquidation.

### B.  Analysis of Income and Expenses

The Debtors are employed as a cook and a hairdresser respectively.  According to the Amended Schedules filed by the Debtors, they have approximately $477.52 of net disposable earnings.  This net disposable earnings figure is predicated upon the following facts.  First, the Debtors have received a trial modification of their first mortgage.  This trial modification includes a principle, interest, tax and insurance payment of $1,623.82.  The current, contractual payment of this loan is $3184 per month.  Additionally, the Debtors anticipate that any permanent modification of the first mortgage will include payments that will be graduated over time.  The net disposable earnings figure is also predicated on the assumption that the Debtors can continue working into the conceivable future, which is not certain given the Debtors' current ages and occupations.  Finally, as the attached Exhibit 1 shows, the Debtors have no disposable income pursuant to § 1325(b)(2), as required to be committed under § 1129(b).  Accordingly, the Debtors believe that the proposed distribution contained below commits all of the Debtors' required disposable earnings to satisfying their unsecured creditors.

This analysis has been prepared by the Debtors in good faith in an attempt to justify and assure unsecured creditors that any distribution offered under the Debtors' plan is greater than the distribution that could reasonably be expected in a Chapter 7 liquidation case.

### III.    TAX CONSEQUENCES TO THE BANKRUPTCY ESTATE

The Debtors does not believe that there are any tax consequences to the Bankruptcy Estate.  **Although Debtors believe their position concerning the tax consequences of his Plan**

3

**are correct, Creditors must reach their own conclusion regarding the Debtors' position on this matter.**

### IV.    PLAN OF REORGANIZATION.

The provisions of the Plan divide his creditors into five (5) classes and also satisfy three categories of claims that are not "classed" by the Bankruptcy Code.

**A. Non-Classed Claims**

The following claims will be treated through the Debtors' Chapter 11 plan but will not be classified by the Plan and will be treated as described herein:

<u>Administrative Expense Claims</u>.   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

<u>Priority Tax Claims</u>.   Each holder of a priority tax claim will be paid through this plan together with post-confirmation interest.  The Debtor does not anticipate any such claims.

<u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**B. Classes of Claims**

<u>Class 1</u>.  Secured Claim of Bank of America, N.A. in connection with the Debtors' First Mortgage on the Real Property.

<u>Class 2</u>.  Secured claims of Toyota Motor Credit Corporation, Claims 6-1 and 7-1 on the Court's Claims Register.

<u>Class 3</u>.  Secured claim of Bank of America, N.A. in connection with the Debtors' Second Mortgage on the Real Property, Claim No. 4-1 on the Court's Claims Register.

<u>Class 4</u>.  Secured claim of Bank of America, N.A., referenced in Claim No. 5-1 on the Court's Claims Register.

<u>Class 5</u>.  All unsecured claims allowed under § 502 of the Code.

**C. Summary of Plan**

The Debtors will fund this Plan in the following manner:

4

The Debtors will make one distribution of $24,000 on or before December 1, 2011, or 60 days after confirmation of this Plan, <u>whichever is later</u> to provide for the payment due to provide for the distribution to the unsecured, general claims contained in Class 5.

**THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. CREDITORS ARE URGED TO READ THE PLAN IN FULL. CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTORS AND THE CREDITOR, AND AN INTELLIGENT JUDGMENT CONCERNING THIS PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.**

**V.     OBJECTIONS TO PROOFS OF CLAIM AND AVOIDANCE ACTIONS**.

Creditors may have filed proofs of claim stating claim amounts with which the Debtors may disagree and believe are erroneous. The Debtors may file objections to claims, on any basis, including improper amount, improper claim as to classification hereunder, lack of consideration, or otherwise. Debtors expect to file any objections to claims no later than ninety (90) days from the filing of any such claim. At this time, the Debtors do not expect to file any objections to any claims.

The plan will provide for the Court to retain jurisdiction of the case for the purposes of resolving objections to claims which may be filed after the Effective Date of the Plan. The filing of an objection to any proof of claim filed against the Debtors and/or his estate shall preclude the consideration of any such claim as "Allowed" for the purposes of a distribution which otherwise might be due to such claimant in accordance with the terms of the Plan. In all contested proof of claim matters, distributions upon the claim amount, to the extent it has actually become payable will be deposited in an escrow account pending resolution of the dispute, either through negotiation or judicial determination. If the objection is sustained, in whole or in part, or if any claim is determined to be in the amount of zero ($0.00) dollars, then the funds previously reserved to which the creditor may no longer be entitled to receive as distribution shall be redistributed among creditors *pro rata* as appropriate.

At this time, the Debtors are not aware of and do not intend to file any avoidance actions. However, the Debtors reserve the right to file avoidance actions within 90 days from the date of discovery of any such claims.

**VI.     CONCLUSION**

The Debtors believes that, based on the financial information disclosed herein and the documents filed in the Bankruptcy Court, the plan of reorganization contained herein will afford creditors an opportunity to realize amounts substantially in excess of that which would be realized upon the liquidation of the Debtors' assets. The Debtors urge each creditor to review this Disclosure Statement and the Statement of Financial Affairs and Schedules on file with the Bankruptcy Court, as well as, the Debtors' monthly reports of income and expenses which are

also on file with the Bankruptcy Court, before coming to a decision as to the acceptability of the Plan.

   Should you have any questions after consulting with your own counsel, your counsel or you may contact the offices of Michael G. Dana, Esquire, The Fried Law Firm, P.A., The Air Rights Center – North Tower, 4550 Montgomery Avenue, Suite 710, Bethesda, Maryland 20814; Telephone: (301) 656-8525; Facsimile: (301) 656-8528, E-mail: mdana@friedlaw.com, attorney for Debtors and Debtors-in-Possession, Hassan Navabi and Yulia Mendyuk.

   Respectfully submitted this 28th day of June, 2011.

          /s/ Hassan Navabi
          Debtor and Debtor-in-Possession

          /s/ Yulia Mendyuk
          Debtor and Debtor-in-Possession

*/s/ Michael G. Dana, Esquire*
Michael G. Dana, Esquire, FBN 72106
The Fried Law Firm, P.A.
4550 Montgomery Avenue, Suite 710N
Bethesda, Maryland 20814
Attorney for Hassan Navabi & Yulia Mendyuk